# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SCOTT, Jr., | : | Civil No. 4:21-CV-01985 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BLOSSBURG BOROUGH, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Blossburg Borough, Shane Nickerson, Joshua McCurdy, and Patrick J. Barrett, III (collectively, "Defendants"). (Doc. 11.) This action was brought by Plaintiff Robert Scott, Jr. ("Scott") to recover damages for Defendants' alleged violations of the Americans with Disabilities Act, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), the Family and Medical Leave Act ("FMLA"), the First Amendment, and the Pennsylvania Whistleblower Law ("PWL"). (Doc. 1.) For the following reasons, the court will deny the motions to dismiss the ADA, PHRA, FMLA, and PWL claims, but will grant the motion to dismiss the First Amendment Retaliation claim without prejudice to Scott filing an amended complaint. Further, the court will grant in part and deny in part the motion as to punitive damages.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

According to the complaint, Scott began working for the Blossburg Borough Police Department ("the Department") in September 2004.  (Doc. 1, ¶ 17.)  On about October 11 and 12, 2020, Scott requested time off work for his mental health from the Chief of Police, Joshua McCurdy ("McCurdy").  (*Id.* ¶ 23.)  After roughly five and one-half weeks of medical leave, on November 25, 2020, Scott had a meeting with McCurdy, Mayor Shane Nickerson ("Nickerson"), and the Borough Solicitor, Patrick J. Barrett, III ("Barrett").  (*Id.* ¶ 25.)   During the meeting, Scott explained that he had completed his medical treatment and was ready to resume work.  (*Id.* ¶ 26.)  Defendants advised Scott that he was not able to resume work and pressured him to resign due to their concerns with his mental health.  (*Id.*)  A few days later, Scott followed up by email with McCurdy to discuss details of a potential severance package; he was then advised that as of November 25, 2020, he had been placed on "administrative leave."  (*Id.* ¶ 28.)

During the next four months, Scott continued to gather medical clearances from various providers, confirming again and again that he was able to return to work and had no acute mental health issues.  (*Id.* ¶ 31.)  Scott's attempts to inquire about the status of his employment during this time were not answered.  (*Id.* ¶ 32.)

Scott remained on administrative leave until April 21, 2021, at which time he was notified via letter that his leave was being converted to a suspension

pending the potential for termination for various performance-related concerns. (*Id.* ¶ 36.)  A hearing was held on April 29, 2021, where Barrett presented the performance-related concerns, many of which dated back to 2019.  (*Id.* ¶ 41.)  When questioned, McCurdy admitted that he and Barrett had come up with the performance issues as a pretext to terminate Scott.  (*Id.* ¶ 38.)[1]  McCurdy additionally admitted that these performance issues were only looked into after Scott's request for medical leave.  (*Id.* ¶ 43.)

Also during the hearing, Nickerson discussed how Scott had previously come to him with concerns about McCurdy falsifying documents and other instances of misconduct by McCurdy.  (*Id.* ¶ 51.)  Following the hearing, Scott was terminated in June 2021.  (*Id.* ¶ 22.)

On the basis of these allegations, Scott filed a complaint against the Defendants on November 22, 2021, alleging violations of the ADA, PHRA, FMLA, First Amendment, and the PWL.  (Doc. 1.)  Defendants filed a motion to dismiss the complaint, along with a supporting brief, on January 13, 2022.  (Docs. 11, 12.)  Scott timely filed a brief in opposition on January 27, 2022.  (Doc. 15.)  The time for filing a reply brief has passed; accordingly, the motion is ripe for disposition.

---

[1] The court notes that the complaint contains misnumbered paragraphs, but the court will follow the numbers assigned.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C § 1367.   Further, venue is appropriate because the action detailed in the complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## DISCUSSION

Defendants set forth several arguments in their motion to dismiss.  They argue that Scott failed to allege that he is a qualified individual with a disability pursuant to the ADA and PHRA and that Scott was denied benefits to which he was entitled under the FMLA.  (Doc. 12.)  Defendants further assert that administrative remedies against Barrett were not properly exhausted, that Scott's comments are not protected speech under the First Amendment, that there are no facts to support a PWL claim, that punitive damages are not recoverable against Blossburg Borough, and that the facts do not support a claim for punitive damages against McCurdy, Nickerson, or Barrett.  (*Id.*)  The court will address each argument in turn.

**A. Defendants' Motion to Dismiss Scott's ADA and PHRA Claims Will
    Be Denied.**

Defendants first submit that Scott has failed to assert that he is within the

ADA's definition of "disabled." (Doc. 12, p. 11.) Under the ADA, "disability" is

defined as "(A) a physical or mental impairment that substantially limits one or

more of the major life activities of such individual; (B) a record of such an

impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

12102(1)(A)–(C).

Regarding option (A) to meet the ADA's definition of disability, Defendants

argue that the complaint is silent as to any limitation on one or more of Scott's

major life activities. (Doc. 12, p. 17.) Conversely, Scott asserts that he was

limited in his ability to work, which the ADA specifically lists as a major life

activity. (Doc. 15, p. 20 (citing 42 U.S.C. § 12102(2)(A)).) The complaint simply

states that Scott requested time off work to address his mental health concerns.

(Doc. 1, ¶ 23). Even accepting this factual allegation as true, the complaint fails to

identify with any specificity the substantial limitation on the major life activity of

working. The court therefore finds that Scott has failed to adequately plead he

meets the definition of "disability" under option (A) because he has not adequately

alleged a substantial limitation on a major life activity.

Regarding option (C) to meet the ADA's definition of disability, as noted by

both Scott and Defendants, the statute specifically provides that if an individual

establishes that he has been subject to an action prohibited by the ADA because of an actual or perceived mental impairment, he meets the requirement of "being regarded as having such an impairment."  42 U.S.C. § 12102(3)(A); *see* Doc. 12, p. 12; Doc. 15, p. 13.  The complaint outlines actions taken by Defendants, including placing Scott on administrative leave immediately following his request for time off for his mental health, which shows he was "regarded as" impaired.  (Doc. 1, ¶ 28.)  Thus, this satisfies option (C) of the "disability" definition of having a "perceived" impairment.

Defendants also accurately assert that there is an exception that can apply to option (C) of meeting the definition of disability.  (Doc. 12, p. 19.)  Per the statute, a disability that is both "transitory and minor" is an exception to the "regarded as" option to meet the definition of having a disability.  42 U.S.C. § 12102(3)(B). Though not argued in the motion to dismiss, in their brief in support, Defendants cite caselaw explaining this exception.  (Doc. 12., p. 19-21.)  Defendants also accurately state that it is a defendant's burden to establish that the impairment is both transitory and minor for this exception to apply.  (*Id.* at p. 19.)  After providing information regarding the applicability of the exception in general, Defendant includes only one sentence arguing that Scott's claim is insufficient based on this exception, without any factual reference in support.  (*Id*. at p. 20.) Scott responds by saying there is nothing in the complaint that suggests his

impairment was transitory and minor.  (Doc. 15, p. 12.)  As it is Defendants'
burden to establish that this exception applies, the conclusory statement made by
Defendants–without more–is inadequate.  Therefore, the court does not have
sufficient evidence to determine whether the exception to option (C) applies at this
stage of the litigation.

Next, Defendants argue that Scott has failed to allege a prima facie case of
discrimination.  (Doc 12, pp. 11–12.)  In relevant part, the ADA prohibits
employers from "discriminat[ing] against a qualified individual on the basis of
disability in regard to . . . discharge of employees . . . and other terms, conditions,
and privileges of employment."  42 U.S.C. § 1211(a).  To state a claim of disability
employment discrimination under the ADA, a plaintiff must establish: "(1) he is a
disabled person within the meaning of the ADA, (2) he is otherwise qualified to
perform the essential functions of the job, with or without reasonable
accommodations by the employer; and (3) he has suffered an otherwise adverse
employment decision as a result of discrimination."  *Taylor v. Phoenixville Sch.
Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Gaul v. Lucent Tech.*, 134 F.3d 576,
580 (3d Cir. 1998)).

As discussed above, Scott has satisfied the first requirement of establishing
that he is a disabled person, per option (C), within the meaning of the ADA.  The
second element of a prima facie case, which requires the disabled person to

establish that he is qualified to perform the essential functions of the job, without

or without accommodations, has been met by Scott in several ways.  Scott alleges

that he attempted to return to work at the November 25, 2020 meeting, as he was in

a good position medically and was able to resume working.  (Doc 1, ¶ 26.)  The

complaint details Scott's long history with the Department, noting that he worked

there for approximately seventeen years and, during that time, there were never

any work performance issues relating to Scott's mental health concerns.  (*Id.* ¶¶ 17,

23.)  Significantly, his request for medical leave was voluntary and not premised

on any concern on the part of the Defendants.  (*Id.* ¶ 23.)  Additionally, in his

complaint Scott lists numerous medical providers who provided him medical

clearances enabling him to return to work following his medical leave.  (*Id.* ¶ 31.)

Considering Scott's averments that he attempted to return to work because he felt

his mental health issues were resolved, his long record with the Department

without any performance issues due to his mental health, and the medical

clearances he obtained in order to enable his return to work, the complaint clearly

alleges that Scott was qualified to perform the essential functions of his job with

the Department.  Therefore, the second requirement of his prima facie case is met.

The third requirement of the ADA prima facie case, that the disabled person

suffered an adverse employment decision as a result of discrimination, is also met,

as Scott describes being involuntarily placed on "administrative leave" following

his FMLA leave, despite his requests to resume work.  (*Id.* ¶ 32.)  He also alleges

this led to his involuntary termination in June, 2021.  (*Id.* ¶ 39.)  Scott discusses in

great detail that these actions were taken because the Defendants viewed him as a

"liability" following his request for leave due to his mental health.  (*Id.* ¶ 36.)

Because Scott details involuntary leave and ultimately termination as a direct result

of Defendants' perception of his mental health, he has clearly alleged an adverse

employment decision as a result of discrimination.  Since all three requirements of

a prima facie case are met, Scott has adequately alleged a prima facie case of

discrimination under the ADA.

Finally, Defendants briefly argue that Scott has failed to request an

accommodation.  (Doc 12, p. 12.)  This argument is mentioned without any

supporting caselaw or explanation regarding the supposed insufficiency.  As noted

above, the second requirement for a prima facie case of disability discrimination

requires that the party be a qualified individual who "with or without reasonable

accommodation, can perform the essential functions of the [job] that such

individual holds or desires."  The language of "with or without" establishes that

Scott is neither required to show that he needed an accommodation, nor that he

requested one.

In any event, Scott has established that he requested an accommodation.  A

leave of absence may constitute a "reasonable accommodation," under the ADA

under certain circumstances.  *Carpenter v. York Area United Fire & Rescue*, No.
18-2155, 2020 WL 1904460, at *6 (M.D. Pa. Apr. 17, 2020) (citing *Conoshenti v.
Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004)).  To be considered a
reasonable accommodation, a request for leave "cannot be indefinite or open-
ended; there must be some expectation that the employee could perform his
essential job functions in the 'near future' following the requested leave."  *Id.*
Scott requested leave and the alleged facts support this being a reasonable
accommodation as it was not indefinite or open-ended.  (Doc. 1, ¶ 23.)  In the
meeting between Scott and Defendants less than six weeks after his FMLA leave
began, Scott expressly told Defendants he was able to return to work.  (*Id.* ¶ 26.)  It
was following this meeting, once Scott advised his employer that he no longer
needed leave, that the adverse actions commenced.  As Scott did not seek an
indefinite or open-ended leave, he did request a reasonable accommodation.

In addition to the arguments regarding the ADA claims, Defendants argue
that the PHRA has a standard for alleging a disability that is different than the
ADA standard.  (Doc. 12, p. 11.)  Defendants cite to caselaw in support of this
proposition, but their argument as to how Scott fails to meet the PHRA standard is
unclear.[2]

---

[2] While Defendants' motion to dismiss argues that Scott's PHRA claim fails as the allegations do
not establish a causal connection to establish a claim for retaliation, there is no argument in the

Both the ADA and PHRA provide that employers may not discriminate against employees because of disability.  42 U.S.C. § 12112(a); 43 PA. STAT. ANN. § 955.  In both federal and Pennsylvania courts, a plaintiff's claims under the ADA and PHRA are treated as coextensive.  *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).  In addition, the PHRA's definition of disability is coextensive with the definition of disability under the ADA.  *Id.*  As discussed above, to satisfy the requirement of having a "disability," a plaintiff must show one of three options: an actual mental or physical impairment that substantially limits one or more major life activities; a record of such impairment; or that his employer regarded him as having a disability. *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266 (3d Cir. 2012).  As Scott has met the option of "regarded as," he has adequately pled he meets the definition of disabled under both the ADA and the PHRA.

As Scott has sufficiently pled that he is disabled, has pled a prima facie case of discrimination under the ADA, and has pled that he requested an accommodation, the motion to dismiss the ADA and PHRA claims will be denied.

## B. Defendants' Motion to Dismiss the Claims Against Barrett Will Be Denied.

Defendants argue that Barrett should be dismissed from the complaint as Scott never named him specifically in administrative proceedings.  (Doc. 12, p.

---

brief regarding this issue.  Therefore, the court will not consider that argument further and the motion is denied in this regard.

21.)  Claimants may only bring an action under the PHRA after exhausting the PHRA's administrative remedies. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Clay v. Adv. Comput. App., Inc.*, 559 A.2d 917, 920–21 (Pa. 1989)).  To exhaust administrative remedies, a plaintiff must follow the administrative procedures outlined in 42 U.S.C. § 2000e-5, which requires the plaintiff to file a complaint of discrimination before the Equal Employment Opportunity Commission ("EEOC"), and obtain a right-to-sue letter. *Id.*; *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).

In his complaint, Scott specifically alleges that he listed all Defendants individually in the EEOC Charge.  (Doc. 1, ¶ 61.)  As the court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, Plaintiff has sufficiently established that Barrett was listed individually in the EEOC Charge.  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Reviewing Exhibit B provided by Defendants, in the first paragraph on the "Charge Information Sheet" under the caption "Charge Details," it plainly states

"[a]s set forth in the body of this Charge, I also bring this Charge individually against the Mayor, Chief of Police, and Solicitor."  (Doc. 26, p. 3.)  Exhibit B describes the facts of the case and further provides that: "This Charge is expressly being brought against the Major, Chief of Police, and Solicitor under the Pennsylvania Human Relations Act ("PHRA")."  *Id.*  Barrett is the Solicitor.  The document continues to list specific examples regarding the allegations of Barrett's involvement in the discriminatory acts.  *Id.*

As Scott has sufficiently established that the administrative proceedings were properly exhausted against all individual Defendants, and Defendants themselves have provided the evidence to confirm this fact, the court finds that Barrett has been properly named in administrative proceedings.  Thus, the motion to dismiss the claims against Barrett will be denied on this ground.

### C. Defendants' Motion to Dismiss the FMLA Claim Will Be Denied.

Defendants argue that Scott has failed to sufficiently allege a claim for interference under the FMLA.[3]  (Doc. 12, p. 27.)  The FMLA protects individuals from discrimination based on the exercise of their FMLA rights under its "retaliation" provisions.  *See* 29 U.S.C. § 2615(a)(1)–(2); 29 C.F.R. § 825.220(c)

---

[3]While Defendants' motion to dismiss argues that Scott's claim fails to allege an adverse employment action, a requirement for an FMLA retaliation claim, there is no argument in the brief regarding this issue.  Therefore, the court will not consider that argument further and the motion will be denied in this regard.

("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").  Employers cannot "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c).  When specifically addressing how the FMLA prohibits interference by employers, it is noted that an employer is prohibited "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  *Id.*

To state a claim for interference with benefits under the FMLA, a plaintiff must plead that: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.  *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017); *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014).

Defendants argue that Scott failed to allege that he was denied benefits to which he was entitled under the FMLA, the fifth requirement for an interference claim.  (Doc. 12, p. 27.)  Specifically, Defendants argue that Scott's termination was unrelated to his request for leave.  (*Id.* at 28.)  However, Defendants overlook their own reference to the Third Circuit's opinion in *Erdman v. Nationwide*

*Insurance Co.*, 582 F.3d 500, 509 (3d Cir. 2009), in which the court observed that an employee may have a claim for interference if he or she requested FMLA leave and was subsequently terminated.  (Doc. 12, p. 27.)  Specifically, *Erdman* held that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."  *Erdman,* 582 F.3d at 509.

In Scott's complaint, he specifically alleges that any performance issues raised to justify his termination were pretextual, and his termination was a result of discriminatory and retaliatory reasons related to his medical leave.  (Doc. 1, ¶ 47.) This statement is supported by factual allegations made throughout the complaint including that the performance issues dated back two years and were for minor issues; that he did not have performance issues prior to his medical leave request (which was voluntary and not due to any work-related issues); and that the performance issues were only brought up after he attempted to resume working following his medical leave.  At the pleading stage, because the court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, Scott has sufficiently pled that he has suffered an FMLA violation in the form of interference as he alleges he was terminated for discriminatory reasons related to his medical leave.  Therefore, the motion to dismiss the FMLA claim is denied.

### D. Defendants' Motion to Dismiss the First Amendment Retaliation Claim Will Be Granted Without Prejudice to Scott Amending His Complaint.

Defendants first argue that Scott's complaint for a First Amendment Retaliation claim is silent as to a protected activity.  (Doc. 12, p. 30.)  A government employee's speech "is only protected if it occurred in his or her capacity as a citizen rather than as a public employee."  *Fulton v. City of Phila.*, 922 F.3d 140, 162 (3d Cir. 2019) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421, (2006)).  To establish that his speech is protected, a government employee must prove that "(1) the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public."  *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006)).

In considering Defendants' argument, the court notes that Scott has not pled he was acting in his capacity as a private citizen when he raised issues regarding McCurdy's alleged conduct.  As Scott has not pled that he was acting as a private citizen when he met with Nickerson or when he spoke with the Pennsylvania State

Police about McCurdy, the motion to dismiss the First Amendment retaliation

claim will be granted without prejudice to Scott amending the complaint.[4]

### E. Defendants' Motion to Dismiss the Whistleblower Claim Will Be Denied.

Defendants argue that Scott has not stated a valid claim under the

Pennsylvania Whistleblower Law, because there was no wrongdoing reported by

Scott regarding McCurdy's conduct.  (Doc. 12, p. 31.)  The PWL provides that an

employer may not retaliate against an employee for reporting "to the employer or

appropriate authority an instance of wrongdoing or waste by a public body."  43

PA. CONS. STAT § 1423(a).  Wrongdoing is defined as "[a] violation which is not of

a merely technical or minimal nature of a Federal or State statute or regulation, of a

political subdivision ordinance or regulation or of a code of conduct or ethics

designed to protect the interest of the public or the employer."  43 PA. CONS. STAT

§ 1422.

Here, Scott has alleged that he reported wrongdoing by Chief McCurdy as

he spoke with both Nickerson and the District Attorney about McCurdy falsifying

documents.  (Doc. 1, ¶ 51.)  Scott notes that the conduct that he reported amounts

to misdemeanor and felony offenses under Pennsylvania law.  (*Id.* ¶ 50.)  Since

---

[4] In passing, Defendants raise a second issue arguing that Scott's complaint does not allege that his protected activity was a factor in the purported retaliatory action.  (Doc. 12, p. 30.)  On this point, Scott's complaint is sufficient.  Scott does specifically allege that Defendants engaged in First Amendment retaliation in their decision to terminate Scott.  (Doc. 1, ¶ 47.)

Scott has alleged that he reported illegal activities by McCurdy, he has sufficiently alleged that he reported a "wrongdoing" for purposes of the PWL.

Defendants also argue that no Defendant other than McCurdy should be liable, as the allegations only concern McCurdy.  (Doc. 12, p. 30.)  However, Scott alleges that all Defendants were involved in the decisions to place him on administrative leave, suspend him, and ultimately terminate him.  (Doc. 1, ¶ 55). Scott also alleges that a determinative factor in his administrative leave, suspension, and termination were Scott's complaints about McCurdy.  (*Id.* ¶ 74.)

Since Scott has adequately alleged that he reported a "wrongdoing" by McCurdy and also alleged that all Defendants took part in the decision to retaliate against him, the motion to dismiss the PWL claim will be denied.

### F.  Defendants' Motion to Dismiss Punitive Damages Will Be Granted In Part and Denied In Part.

First, Defendants argue that punitive damages are not recoverable against Blossburg Borough.  (Doc. 12, p. 31.)  It is well settled that a municipality is immune from punitive damages.  *Newport v. Fact Concerts*, 453 U.S. 247 (1981). Therefore, the motion to dismiss punitive damages against Blossburg Borough will be granted.

Second, Defendants argue that punitive damages are not recoverable against any defendant under the PHRA.  (Doc. 11, p. 3.)  As the PHRA does not expressly provide for punitive damages in its language, the Pennsylvania Supreme Court has

found that punitive damages are not recoverable against a defendant under the

PHRA.  *Hoy v. Angelone*, 554 Pa. 134, 146 (1998).  Accordingly, the motion to

dismiss the punitive damages against Defendants as to the PHRA claim will be

granted.

　　　As to the remaining claims, Defendants argue that Scott fails to sufficiently

allege facts to warrant the imposition of punitive damages against McCurdy,

Barrett, and Nickerson.  (Doc. 12, p. 32.)

　　　In light of the court's finding that the allegations of violations of the ADA,

FMLA, and PWL will not be dismissed, the court likewise declines to grant the

motion to dismiss the punitive damages claim.  Indeed, it would be premature to

make the factual determinations required for an award of punitive damages at the

motion to dismiss stage.  *See Harvell*, 2020 U.S. Dist. LEXIS 206828, at *20

("[B]ecause the question of whether punitive damages are proper often turns on the

defendants' state of mind, this question frequently cannot be resolved on the

pleadings alone but must await the development of a full factual record at trial.")

(citing *In re Lemington Home for the Aged*, 777 F.3d 620, 631 (3d Cir. 2015)).

Therefore, Defendants' motions to dismiss the claim for punitive damages against

Nickerson, McCurdy and Barrett as to the ADA, FMLA, and PWL claims will be

denied.

### CONCLUSION

Based on the above analysis, Defendants' motion to dismiss the ADA, PHRA, FMLA, and PWL claims will be denied.  The motion to dismiss the First Amendment retaliation claim will be granted without prejudice to Scott filing an amended complaint.  The motion to dismiss the punitive damages against Blossburg Borough and to the extent sought for the PHRA claim will be granted. The motion to dismiss the punitive damages against McCurdy, Nickerson and Barrett for the remaining claims will be denied.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  November 10, 2022