UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SCOTT, JR., | ) | CIVIL NO.  4:21-CV-1985-WIA |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| BLOSSBURG BOROUGH, *et al*, | ) | |
| Defendants | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

The parties filed thirteen (13) Motions in Limine (hereafter MIL). This case is set for a jury trial beginning on April 8, 2025. In this Opinion and Order we will decide those motions that can be resolved before trial.

### II.    RELEVANT BACKGROUND

Robert Scott, Jr. (Plaintiff) was a Blossburg Borough police officer from 2004 until June 9, 2021, when his employment was terminated by a decision of the Blossburg Borough Council. In this lawsuit he is suing the Borough of Blossburg, former Mayor Shane Nickerson, Police Chief Joshua McCurdy, and Borough Solicitor Patrick Barrett alleging violations of the Americans with Disabilities Act (disability discrimination, failure to accommodate, and retaliation), The Pennsylvania Human Relations Act, and First Amendment retaliation. Claims under the Family Medical Leave Act and the PA Whistleblower Law were dismissed at summary judgment.  The factual history is both familiar and disputed

by the parties. I will summarize the facts only as needed to resolve the motions in limine in each section.

## III.    LEGAL STANDARD

Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, Courts are vested with broad authority to manage their cases, and trials.[1] This authority includes the discretion to rule *in limine* on evidentiary issues.[2] This discretion may be exercised to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence, or to narrow the evidentiary issues and eliminate unnecessary interruptions during trial. Courts, however, should exercise caution before doing so.[3]

Motions in limine to exclude evidence should be granted "only when the evidence is clearly inadmissible on all potential grounds."[4] The Court can deny a

---

[1] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) ("Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials.").

[2] *Id.*

[3] Although there are some advantages to resolving evidentiary issues in limine, there are also drawbacks. Courts have observed that motions in limine enable more in-depth briefing than would be available at trial. However, such motions often present issues for which final decision is best reserved for a trial situation. *Landau v. Lamas*, No. 3:15-CV-1327, 2021 WL 2930078, at *1 (M.D. Pa. July 12, 2021).

[4] *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D. Pa. 2017).

motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded.[5]

Pursuant to Rule 402 of the Federal Rules of Evidence "[i]rrelevant evidence is not admissible."[6] The Federal Rules of Evidence, however, are generally viewed as "rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth."[7] This broad concept of what constitutes "relevant" evidence is underscored in Rule 401, which sets out the test for determining whether evidence is relevant. Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence"; and (2) "the fact is of consequence in determining the action."[8] Thus, it follows that evidence is not relevant when it has no tendency to make a fact or consequence more or less probable.[9] Although this Rule gives a Court "great freedom to admit evidence," it substantially diminishes its authority to exclude evidence as not relevant.[10] Courts have observed that where a motion in limine seeks to exclude broad classes of evidence, the motion "should generally be deferred until trial to allow for the

---

[5] *Id.*

[6] Fed. R. Evid. 402.

[7] *Elm Cooper, LLC v. Modular Steel Systems, Inc.*, No. 4:19-CV-01053, 2020 WL 905532 at *2 (M.D. Pa. Feb. 25, 2020).

[8] Fed. R. Evid. 401.

[9] *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994).

[10] *Id.*

resolution of questions of foundation, relevancy, and potential prejudice in the proper context."[11] Finally, it is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." [12]

## IV.    DISCUSSION

The parties filed thirteen (13) Motions in Limine. We will discuss each motion in turn.

### A.    DEFENDANTS' MIL: EVIDENCE PRESENTATION (DOC. 79)

In this Motion in Limine (Doc. 79) Defendants seek "an Order precluding the Plaintiff, his counsel, expert representatives, and witnesses from arguing, testifying, referencing or otherwise attempting to introduce, either directly or indirectly, in any matter whatsoever during voir dire, opening, examination of witnesses, objections or argument without first obtaining the permission of this Court outside the presence and hearing of the jury regarding the use of the following:

　　1.  Defendants' Technology;

　　2.  Documents Not Produced in Discovery;

　　3.  Witnesses Not Identified in Discovery; and

---

[11] *Leonard*, 981 F.Supp.2d at 276.

[12] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). *Landau v. Lamas*, No. 3:15-CV-1327, 2021 WL 2930078, at *2 (M.D. Pa. July 12, 2021).

4.  Speaking Objections by Plaintiff's Counsel."

This type of Omnibus Pre-Trial Motion in Limine is disfavored in this district.[13]

### *Using Defendant's Technology*

Defendants assert that their counsel has worked hard to prepare evidence for display at trial. Defendants' counsel does not want to help Plaintiff if counsel asks him to use his displays. Use of evidence at trial is the proper subject of a Local Rule 16.3(b) conference.

### *Documents and Evidence not previously disclosed*

Defendants also seek to prevent the introduction of documents not produced in discovery and witnesses not identified in discovery. This motion is premature. All counsel are expected to follow F. R. Civ. Pro. 26 and Local Rule 16.3(b). If the 16.3(b) conference regarding the exchange of exhibits and witness lists uncovers a dispute, the time to bring it to the attention of the court is at the Local Rule 16.2 conference.

Finally, Defense counsel attempts, in advance, to block any speaking objections. Speaking objections are typically disfavored.

Regarding documents not produced in discovery, witnesses not identified in discovery, and speaking objections by Plaintiff's counsel, it is and shall remain

---

[13] *See, Bridgen v. Ast,* No. 3:19-CV-1105, 2021 U.S. Dist. LEXIS 225177, at *5-6 (M.D. Pa. Nov. 22, 2021).

Defendant's obligation to timely raise an objection in any instance where counsel believes that Plaintiff seeks to introduce objectionable evidence or that Plaintiff is engaging in improper conduct, including but not limited to speaking objections. To the extent that Plaintiff seeks to use Defendant's technology, it shall be Defendant's obligation to raise an objection if he opposes that request and ask the Court to hear the objection outside the presence of the jury.

Defendants' Motion in Limine regarding evidence presentation is DENIED.

## B.    DEFENDANTS' MIL: PHYSICIAN TESTIMONY (DOC. 81)

In this Motion in Limine, Defendants seek to preclude Plaintiff's treating physicians or treating medical specialist from offering any expert testimony at the trial of this matter (Doc. 81). The motion describes the various return to work notes Plaintiff submitted from a variety of medical sources. Defendants seek to preclude Plaintiff's treating physicians or psychologists, from offering any testimony relating to causation or prognosis at the trial of this matter. (Doc. 82, p. 13).

In response, Plaintiff points out that pursuant to Federal Rule of Evidence 701, the opinion testimony of a witness who is not testifying as an expert is limited to one that is (1) "rationally based on the witness's perception", (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue", and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702", which governs testimony by an expert witness. Fed. R. Evid.

701. Mr. Scott is not calling any of his treating physicians to offer any "expert testimony," but merely to offer facts gained during their diagnosis and treatment of Mr. Scott. This is fully permissible for treating medical providers who have not been designated as "experts." *See Haines v. Davies*, 2009 U.S. Dist. LEXIS 9356, 2009 WL 331433, *3-4 (M.D. Pa. 2009) (permitting treating psychologist, testifying as a lay witness, to testify "as to her personal knowledge, diagnosis, and treatment", but not "as to the causation of Plaintiffs' injuries or to opinions based on medical or scientific knowledge."); *Scopelliti v. Traditional Home Health & Hospice*, No. 3:18-CV-40, 2021 U.S. Dist. LEXIS 183485, at *15-16 (M.D. Pa. Sep. 24, 2021)("Scopelliti's treating physicians will be limited to the facts gained in their diagnosis and treatment of her and will not be permitted to opine about the cause of her injuries and prognosis.") (Doc. 105, pp. 4-5).

Defendants in their motion do not identify who they expect to testify or on what topics. While I agree that experts must have submitted reports before they can provide expert testimony at trial, that does not mean that "experts" including medical providers cannot testify as a fact witness. To the extent that Plaintiff calls any medical providers they may not offer testimony as to causation or future prognosis on the issues in this case.

Counsel are expected to meet and confer, exchange final exhibit and witness lists, and discuss potential evidentiary issues with each witness.  Unresolved issues should be brought to the Court's attention at the final pre-trial conference.

Ruling on this Motion in Limine is **DEFERRED** until the final pre-trial conference or at trial.

### C.   DEFENDANTS' MIL: PUNITIVE DAMAGES (DOC. 83)

Defendants argue that Plaintiff has failed to produce any evidence to support that Blossburg engaged in the sort of "outrageous" conduct necessary to assert a claim for punitive damages. They further argue that this is a "garden variety" employment discrimination case.  Conceding that the Third Circuit has not ruled on the issue, Defendants argue that other courts have ruled punitive damages are not available for ADA retaliation claims. (Doc. 84, p. 1-2, *citing cases*). Defendants then cite cases that hold that punitive damages are available under the ADA where there is a showing that the employer acted "with malice or with reckless indifference to the federally protected rights" of the employee. (Doc. 84, p. 2). In the alternative Defendants argue that Plaintiff should be precluded from arguing for or presenting evidence concerning punitive damages until he has established the necessary predicate of "malice" or "outrageous" conduct. (Doc. 84, p. 5).

In response Plaintiff asserts that he has claims against Defendants for violations of the Americans with Disabilities Act, as Amended ("ADA")(against Defendant Borough only for disability discrimination and retaliation); mirroring violations of state law under the Pennsylvania Human Relations Act ("PHRA")(against all named Defendants); and First Amendment for retaliation, against all named Defendants. (Doc. 109, p. 1).[14] Plaintiff concedes that punitive damages are not available for an ADA *retaliation* claim. (Doc. 109, p.4, fn. 3). But argues that punitive damages are available for claims of ADA *discrimination* and *failure to accommodate* if sufficient evidence is presented to show that a defendant acted with "malice or reckless indifference" to the rights of the employee. (Doc. 109, p. 4).

Plaintiff also argues that the time to raise the sufficiency of the evidence for a punitive damages claim was at the summary judgment stage and not in a motion in limine. (Doc. 109, p. 5).

---

[14] Defendants filed a Motion for Summary Judgment on April 23, 2023. Dkt No.: 48.

The District Court dismissed Mr. Scott's claims under the Family & Medical Leave Act ("FMLA"), as well as his PA Whistleblower claim. Citing Doc. 68. In that opinion Judge Wilson ruled that there was sufficient evidence to show that Chief McCurdy acted with the requisite state of mind to make the First Amendment retaliation claim a jury question. While that ruling is not "final" for the purposes of trial, it is enough to keep the question of punitive damages against Chief McCurdy alive until the conclusion of the trial evidence.

The time to present the sufficiency of the evidence argument on the question of punitive damages in this case is at the conclusion of the Plaintiff's case via a Rule 50(3) motion.[15]

Defendant's Motion to preclude any mention of punitive damages is **DENIED** without prejudice to their right to renew the motion at the conclusion of the Plaintiff's case.

### D.    DEFENDANTS' MIL: EMOTIONAL DAMAGES (DOC. 85)

Defendants move to exclude from trial all evidence regarding Plaintiff's claim for emotional distress damages. (Doc. 85, p. 1). They argue that Plaintiff will not meet her burden of showing that she suffered "physically" from her emotional distress. (Doc. 86, p. 1, errors in original). The defendants cite to a Third Circuit case[16] that upheld the remitter of an emotional distress damages award. But in that case, the remitter came only after presentation of the case to the jury. Defendants also point out the Plaintiff has not presented any expert reports on the issue of emotional distress. (Doc. 85, p. 3). Defendants argue that Plaintiff's anticipated evidence, consisting entirely of his own testimony, is insufficient to present to the jury.[17]

---

[15]  Klatch-Maynard v. Sugarloaf Twp., No. 3:06-CV-0845, 2011 WL 3476814, at *1 (M.D. Pa. Aug. 9, 2011).

[16]  *Spence v. Bd. Of Educ. of Christine Sch. Dist.*, 806 F.2d 1198 (3d Cir. 1986).

[17]  Doc. 86, p. 4, *citing Spence*, supra).

In response Plaintiff argues that an expert is not necessary to prove emotional distress damages:

> "Compensatory damages that may be awarded without proof of pecuniary loss include compensation (a) for bodily harm, and (b) for emotional distress." RESTATEMENT (SECOND) OF TORTS § 905 (1979). Numerous Circuit Courts across the country have accepted a plaintiff's testimony as evidence entitling the plaintiff to compensatory damages. *See Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075 (9th Cir. 2009)("[C]ompensatory damages may be awarded for humiliation and emotional distress established by testimony or inferred from the circumstances, whether or not plaintiffs submit evidence of economic loss or mental or physical symptoms."); *Williams v. Trader Publ'g Co.,* 218 F.3d 481 (5th Cir. 2000) (stating that testimony of a plaintiff alone may be enough for compensatory damages for emotional distress*.); Hitt v. Connell*, 301 F.3d 240, 250-51 (5th Cir. 2002) ("To meet [the] burden [of proving compensatory damages for mental anguish], a plaintiff is not absolutely required to submit corroborating testimony … The plaintiff's own testimony, standing alone, may be sufficient."); and *see Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir.1985)(same); *Williams v. Trans World Airlines, Inc*., 660 F.2d 1267, 1272-73 (8th Cir.1981)(same).[18]

Plaintiff also argues that this motion in limine is improper and should have been brought under Rule 56 at the summary judgment stage. He also argues that the motion in a trial setting is premature, citing the *Scopelliti*[19] case discussed in the section on Doc. 81.

In this case all claims under the FMLA and the Pa Whistleblower law have been dismissed. (Doc. 68). Those claims do not allow for emotional distress

---

[18] (Doc. 107, p. 5).

[19] *Scopelliti v. Traditional Home Health & Hospice*, No. 3:18-CV-40, 2021 WL 4355585, at *1 (M.D. Pa. Sept. 24, 2021).

damages. However, the remaining claims of ADA discrimination and retaliation, PHRA claims and First Amendment retaliation all allow for emotional distress damages if proven. I agree with Plaintiff that expert testimony is not required.

Plaintiff's claim for emotional distress damages must await the presentation of testimony and evidence and the completion of his case-in-chief. The Court cannot speculate who Plaintiff may call in support of his claims, what testimony he may properly elicit, or what other admissible evidence may be offered, all of which may support a claim of emotional distress. Thus, despite Defendant's invitation to do so, the Court cannot decide at this time that Plaintiff's evidence is insufficient or impermissibly speculative such that he should be precluded from claiming damages for emotional distress.

Therefore, Defendant's Motion in Limine regarding Emotional Distress Damages (Doc. 85) is **DENIED** without prejudice to renew it at the conclusion of Plaintiff's case in the form of a Rule 50(e) motion.

### E.    DEFENDANTS' MIL: BACK PAY DAMAGES (DOC. 87)

Defendants have asked the court to preclude any back pay damages under a failure to mitigate damages theory. Defendants correctly lay out the requirements of mitigation in an employment case.[20] Then they make a series of conclusory

---

[20] (Doc. 88, pp. 2-3).

claims about Plaintiff's failure to mitigate[21] but cite no facts the court can rely on when ruling on the motion. As they point out in their brief, failure to mitigate is an affirmative defense, one the Defendants must establish at trial. [22]

Defendants also argue that compensatory damages are not allowed for a retaliation claim involving Title I of the ADA.[23] They make an undeveloped argument that " … title I of the ADA does not contain within it a right to a jury trial unless the defendant consents and that consent is not withdrawn."[24]

In response, Plaintiff argues that 1) the motion is procedurally improper because a plaintiff must first successfully obtain a jury verdict in his favor on a discrimination claim;[25] 2) the defense has the burden to prove a failure to mitigate;[26] 3) whether plaintiff has satisfied his duty to mitigate damages is a question of fact,[27] and 4) failure to mitigate damages does not preclude recovery of back pay under the PHRA.[28]

---

[21] (Doc. 88, pp. 5- ). "Plaintiff failed to exert reasonable efforts to mitigate his damages by not actively looking for employment when it became quite clear his employment with the Blossburg P.D. was coming to and end …" (p. 5-6); "voluntarily withdrawing himself from the job market …" (p. 6); "… refusing to pursue substantially equivalent employment opportunities …" (p. 6)

[22] (Doc. 88, pp. 3-4).

[23] *citing Kramer v. Banc of America Securities, LLC* 355 F.3d 961 (7th Cir. 2004).

[24] (Doc. 88, p. 7).

[25] (Doc. 108, p. 2).

[26] (Doc. 108, pp. 2-4).

[27] (Doc. 108, p. 4).

[28] (Doc. 108, p. 4).

In this motion the Plaintiff has the stronger argument. The factual question of mitigation of damages is one for the jury. The parties should confer and provide proposed jury instructions on these issues. If they can't agree on a joint instruction, they should submit separate proposals. Defendants' Motion in Limine to preclude Plaintiff's claim for back pay damages is **DENIED.**

### F.    PLAINTIFF'S MIL: PRECLUDE UC INCOME AT TRIAL (DOC. 89)

On October 10, 2024, Plaintiff filed a motion in limina requesting that Defendants be prohibited from introducing evidence that Plaintiff received unemployment compensation benefits after he separated from his employment with Blossburg Borough. (Doc. 89). On October 14, 2024, Defendants responded that they do not oppose Plaintiff's Motion.

Accordingly, Plaintiff's motion (Doc. 89) is GRANTED as unopposed. All reference to Plaintiff's receipt of unemployment compensation benefits after Plaintiff's separation form his employment with Blossburg Borough is excluded.

### G.    PLAINTIFF'S MIL:  COUNTS DISMISSED ON S.J. (DOC. 90)

On February 20, 2024, United States District Judge Jennifer P. Wilson issued a memorandum opinion and order entering summary judgment in Defendants' favor as to some of Plaintiff's claims. (Docs. 68, 69). As is relevant to Plaintiff's argument, regarding Plaintiff's ADA claim, Judge Wilson found that Plaintiff was not "actually disabled" as it is defined under the statute but could

proceed based on a theory that he was "regarded as" disabled as it defined under the post-2008 version of the statute. (Doc. 68, pp. 17-29). Judge Wilson granted summary judgment in Defendants' favor as to Plaintiff's claims under the Family and Medical Leave Act and Pennsylvania Whistleblower statute. (Doc. 68, pp. 32-33, 38-40).

October 10, 2024, Plaintiff filed this motion in limine requesting that Defendant be precluded from referring to claims not before the jury or referring to claims that Mr. Scott pleaded in his complaint but were subsequently dismissed as a matter of law. (Doc. 95). On October 14, 2024, Defendants responded that they do not oppose Plaintiff's motion. (Doc. 101).

Accordingly, Plaintiff's motion (Doc. 90) is GRANTED as unopposed. All reference to claims that are not before the jury, including any claims brought in Plaintiff's complaint that were resolved at summary judgment, will be excluded.

## H.    PLAINTIFF'S MIL: ADMIN AGENCY NOTICES/FINDINGS (DOC. 91)

Plaintiff seeks to exclude evidence of any administrative agency notice and/or lack of findings, specifically as to the EEOC and PHRC. (Doc. 91).

The parties agree that Plaintiff exhausted administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") and was issued a right to sue letter before he commenced this action in federal court. (Doc. 96, p. 2). On October 10, 2024,

Plaintiff filed a motion in limine requesting that all reference to the administrative proceedings before the EEOC and PHRC be excluded from trial, and that Defendants be prohibited from introducing any evidence of administrative agency correspondence or notices through either exhibits or testimony and be prohibited from discussing a lack of findings by either the EEOC or PHRC. (Doc. 96, p. 7). On October 14, 2024, Defendants responded that they do not oppose Plaintiff's motion. (Doc. 100).

Accordingly, Plaintiff's motion (Doc. 91) is GRANTED as unopposed. All reference to administrative agency correspondence from the EEOC or PHRC, notices from the EEOC or PHRC, or a lack of findings by either the EEOC or PHRC, is excluded. The Parties shall only be permitted to use Plaintiff's actual charge(s) of discrimination and any responses thereto for purposes of impeachment or other admissible purposes under the Federal Rule of Evidence, if same is warranted at the time of trial based upon the evidence presented. The Court will discuss at the final pretrial conference on March 31, 2025, on how to handle showing portions of the EEOC/PHRC charge vs. the entire EEOC/PHRC charge to the jury, as it contains all claims initially plead, including one for "actual" disability discrimination, which is no longer at issue in this suit (and would unfairly confuse the jury) unless the parties resolve this issue in advance by preparing a redacted document or some other agreement.

## I.    PLAINTIFF'S MIL: CHARACTER AND STALE COMPLAINTS (DOC. 92)

Plaintiff's Motion in Limine (Doc. 92) seeks to prohibit the introduction of "improper character evidence" surrounding stale incidents of discipline or stale citizen complaints that were not contained in the "statement of charges" supporting the basis for Plaintiff's termination. Plaintiff is concerned that the incidents contained in his personnel file obtained thru discovery, but not included in the statement of charges will be used to discredit him at trial.

In support of his motion Plaintiff argues:

It is exceedingly common for courts to prohibit employers from engaging in discussions about a plaintiff's performance and workplace conduct that is unrelated to the claims or elements in a case (or, as in this case, the specific reasons given to Mr. Scott in April of 2021 as to the bases for his termination from employment). See e.g. Redd v. New York State Div. of Parole, 923 F. Supp. 2d 393, at ** 13-17 (E.D.N.Y. 2013)(prohibiting defendant at trial from raising any references to plaintiff's past disciplinary history or performance problems that were unrelated to a claim or defense in the case as inadmissible character evidence and also refusing to permit either party to talk about positive or negative aspects of performance evaluations as they only served as character evidence for either party); Schrieber v. Fed. Express Corp., 2010 U.S. Dist. LEXIS 25806, at * 15 (N.D. Okla. 2010)(In wrongful termination case, court precluded defendant from making any reference at trial to past performance concerns or discipline unrelated to timeframe surrounding termination); Shavuo v. Shinseki, 2013 U.S. Dist. LEXIS Case 4:21-cv-01985-WIA Document 92 Filed 10/09/24 50042, at * 11 (S.D.N.Y. 2013)(Prohibiting defendant in wrongful termination case from introducing any prior discipline unrelated to termination considerations); Wagoner v. J.P. Morgan Chase Bank, N.A., 2014 U.S. Dist. LEXIS 5175, at ** 2-4 (S.D. Ind. 2014)(Court refusing to permit employer to introduce character evidence of performance unrelated to last position held and circumstances surrounding termination unless plaintiff opens the door); Tamburo v.

Ross/West View Emergency Med. Servs. Auth., 2007 U.S. Dist. LEXIS 16196 (W.D. Pa. 2007)(entering an evidentiary ruling prohibiting defendant from referencing past performance and/or discipline of plaintiff unrelated to the termination decision unless plaintiff "opens the door" at trial); Burns v. Slippery Rock Univ. of Pa., 2008 U.S. Dist. LEXIS 3415 (W.D. Pa. 2008)(precluding evidence of bad performance in different assignment wherein it could only be used to show "mere tendency" to be a bad performer).[29]

In response Defendants filed a "Response" that simply states: "1. Denied. The position of Defendants is set out in the Memorandum of Law in Opposition to the pending Motion to be filed." (Doc. 102, filed on October 14, 2024). The motion was filed on October 9, 2024. A responsive brief was due not later than October 23, 2024. To date the promised "Memorandum of Law" has not been filed. Accordingly, because there was no brief in opposition,[30] the Motion in Limine to exclude evidence of complaints that are not included in the April 21, 2021, Statement of Charges, is **GRANTED as Unopposed.** Defendants shall not introduce any evidence of misconduct outside the Statement of Charges, unless Plaintiff denies any previous complaints were ever made or opens the door by proffering similar evidence.

---

[29] (Doc. 92, pp. 8-9).
[30] Local Rule 7.6 regarding submission of briefs opposing motions states: "Any party who fails to comply with this rule shall be deemed not to oppose such motion."

### J.    PLAINTIFF'S MIL: FAILURE TO APPEAL DISMISSAL (DOC. 93)

Plaintiff asserts in his motion that his failure to "appeal" his termination to a Court or pursue any other legislative relief available to him as a public sector employee is not relevant to this case. He also argues that the Borough's decision to uphold the recommendation of termination does NOT have a preclusive effect on his current civil rights claims under the ADA, PHRA, or First Amendment.

In response Defendants filed a "Response" that simply states: "1. Denied. The position of Defendants is set out in the Memorandum of Law in Opposition to the pending Motion to be filed." (Doc. 103, filed on October 14, 2024). The motion was filed on October 9, 2024. A responsive brief was due not later than October 23, 2024. To date the promised Memorandum of Law has not been filed. Accordingly, because there was no brief in opposition,[31] the Motion in Limine to prohibit evidence or discussion of Plaintiff's failure to "appeal" his termination to a Court or pursue any other legislative relief available to him as a public sector employee is not relevant to this case. The Borough's June 9, 2021, (Doc. 93-2, pp. 20-23) decision to uphold the recommendation of termination does NOT have a preclusive effect on his current civil rights claims under the ADA, PHRA, or First Amendment. The parties will confer on an appropriate charge to the jury on these

---

[31] Local Rule 7.6 regarding submission of briefs opposing motions states: "Any party who fails to comply with this rule shall be deemed not to oppose such motion."

issues. IF they cannot submit a joint charge proposal, they must each submit a separate point for charge on these two issues. The Plaintiff's Motion in Limine to probit evidence or testimony regarding Plaintiff's failure to appeal his dismissal, or any suggestion that the Borough Council's June 9, 2021, decision precludes the claims in this lawsuit is **GRANTED as unopposed.**

### K.    DEFENDANTS' MIL: CAT'S PAW THEORY (DOC. 110)

On October 23, 2024, Defendants filed an Amended Motion in Limine to preclude any reference to or reliance on the "Cat's Paw" Theory of Liability to impute liability to the Borough Council based upon alleged animus and actions of non-supervisory parties (Doc 110).

In this motion Defendants seek to "preclude Plaintiff, his attorneys, and any and all witnesses from (1) presenting or making reference to any evidence, argument, or testimony regarding the alleged bias of co-workers of Plaintiff, Mayor Nickerson, Chief McCurdy or Solicitor Barrett, (2) relying on a non-pled "cat's paw" theory to impute liability to Defendants based on the alleged animus and actions of such non-supervisory parties, Mayor Nickerson, Chief McCurdy or Solicitor Barrett."[32] They base this motion on the lack of evidence from any voting member of the Blossburg Borough Council that these Defendants had any influence on their ultimate decision to terminate Plaintiff.

---

[32] Doc. 110, pp. 1-2.

The Plaintiff responds by noting that he is proceeding on several distinct theories[33] and that either theory would warrant either a "cat's paw" or traditional pretext theory.[34] Plaintiff argues that the facts, not the legal theory, control what a jury should decide[35] and that the court should wait until after the presentation of all evidence at trial before deciding the jury charge based on competing legal theories.[36]

The "cat's paw" or "subordinate bias" theory of liability is one in which the plaintiff seeks to hold his employer liable for the animus of a non-decisionmaker.[37]

> A plaintiff "can establish a genuine issue of material fact on a cat's paw theory of liability if he establishes that one or more of his nonsupervisory coworkers: (1) performed an act motivated by discriminatory animus; (2) the act was intended by the coworker to cause an adverse employment action; (3) that act is a proximate cause of the ultimate employment action, (Citation omitted); and either (a) defendants acted negligently by allowing the co-worker's acts to achieve their desired effect though they knew (or reasonably should have known) of the discriminatory motivation, (citation omitted); or (b) the coworker was aided in accomplishing the adverse employment action by the existence of the agency relation."[38]

---

[33] Doc. 114, p. 5.

[34] *Id.*

[35] *Id.* At 7-8.

[36] Id. At 8.

[37] *Marcus v. PQ Corp.*, 458 F. App'x 207, 211 n.3 (3d Cir. 2012)(*citing McKenna, v. City of Philadelphia*, 649 F.3d 171 (3d Cir., 2011).

[38] *Burlington v. News Corporation*, 55 F. Supp.3d 723, 738-39 (E.D. Pa. 2014), c*ited with approval in Montanez v. Missouri Basin Well Servs., Inc.*, No. 4:14-CV-00553, 2017 WL 3701786, at *12 (M.D. Pa. Aug. 28, 2017).

In this case, the question of motive of the mayor, chief and solicitor are fact questions for the jury. Judge Kane outlined the facts of record regarding the actions of these defendants when deciding the Motion for Summary Judgment.[39]

> The court holds that Scott has produced sufficient evidence to enable a reasonable jury to conclude that the Borough terminated his employment because of his mental health incident. While Nickerson, McCurdy, and Barrett were not the people with the final authority to terminate Scott's employment, they were key players in the broader decision-making process, and their actions were motivated, in large part, by Scott's mental health incident. Further, although Defendants claim that the Borough heard nothing about Scott's mental health, both Nickerson and McCurdy detailed his suicide threat, as relayed to them by Guthrie hospital, and the hospital employee's opinion that Scott should not return to work. There are also statements from police committee members, who made the decision to allow the Borough Council to vote on the termination of Scott's employment, that showed those members were motivated, in part, by Scott's mental health status. This is sufficient for a reasonable jury to conclude that the adverse action was caused by Scott's mental impairment.[40]

Nothing in the Motion in Limine or competing briefs brings me to a different conclusion. The Defendant's Amended Motion in Limine asking that Plaintiff's counsel, and all witnesses shall be precluded at the trial from: (I) presenting or making reference to any evidence, argument, or testimony regarding any alleged bias of Defendants Nickerson, McCurdy and Barrett, and (2) relying on the "cat's paw" theory to impute liability to Defendants based on the alleged animus and actions of such co- worker McCurdy and third parties Nickerson and Barrett relies

---

[39] (Doc. 68, pp. 2-8).
[40] (Doc. 68, p. 26).

on factual determinations that must be made by the jury. The parties are encouraged to submit points for charge on the issue of agency liability (i.e. the cat's paw theory).

The Defendants' Motion in Limine (Doc. 110) is DENIED.

### L.    DEFENDANTS' MIL: PRECLUDE EXPERT STALLER (DOC. 116)

This motion appears to be a duplicate of the Motion and Brief (Docs. 117, 118) filed on February 27, 2025. For that reason, this Motion will be **DENIED** as moot.

### M.    DEFENDANTS' MIL: EXCLUDE PLAINTIFF EXPERT ON DAUBERT (DOC. 117)

On February 27, 2025, Defendants filed a Motion to Exclude Plaintiff's Expert (Doc. 117) and a Brief in Support (Doc. 118). A brief in opposition is not due until March 13, 2025. For that reason, a ruling on this motion is deferred pending completion of briefing and a possible *Daubert* hearing. Counsel are instructed to confer on the need for a *Daubert* hearing and report promptly to the Court on available dates.

V.      CONCLUSION AND ORDER

For the reasons stated the Motions in Limine are decided as follows:

(1)     Defendants' Motion (Doc. 79) is **DENIED**;

(2)     Defendants' Motion (Doc. 81) is **DEFERRED** until the final pre-trial conference or at trial;

(3)     Defendants' Motion (Doc. 83) is **DENIED**;

(4)     Defendants' Motion (Doc. 85) is **DENIED**;

(5)     Defendants' Motion (Doc. 87) is **DENIED**;

(6)     Plaintiff's Motion (Doc. 89) is **GRANTED AS UNOPPOSED**;

(7)     Plaintiff's Motion (Doc. 90) is **GRANTED AS UNOPPOSED**;

(8)     Plaintiff's Motion (Doc. 91) is **GRANTED AS UNOPPOSED**;

(9)     Plaintiff's Motion (Doc. 92) is **GRANTED AS UNOPPOSED**;

(10)    Plaintiff's Motion (Doc. 93) is **GRANTED AS UNOPPOSED**;

(11)    Defendants' Motion (Doc. 110) is **DENIED**;

(12)    Defendants' Motion (Doc. 116) is **DENIED AS MOOT**; and,

(13)    Defendants' Motion (Doc. 117) is **DEFERRED** until briefing is concluded and a determination is made if a Daubert hearing is required.

The parties are granted an **EXTENSION OF THE TIME TO SUBMIT JURY INSTRUCTIONS** from March 3, 2025 (Doc. 115) to **March 20, 2025**. All other deadlines set out in the Amended Pretrial Scheduling Order remain.

Date: March 3, 2025                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge