IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT SCOTT, | : | CIVIL NO. 4:21-CV-1985 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| BLOSSBURG BOROUGH, SHANE | : | |
| NICKERSON, JOSHUA MCCURDY, | : | |
| PATRICK BARRETT, III, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.    Factual and Procedural Background

In this Memorandum Opinion we write the final coda in the district court on this longstanding litigation  We are the third judge assigned to this workplace disability discrimination and retaliation lawsuit, the case having originally been handled pretrial by our colleague Judge Wilson and then tried by our retired peer Judge Arbuckle.

This case involves allegations of employment disability discrimination and retaliation brought under federal and state law, along with a claim that the defendants retaliated against the plaintiff due to his exercise of his First Amendment free speech rights. Scott's disability discrimination claims proceeded on a "regarded as" theory;

1

that is, Scott alleged that the defendants regarded him as mentally disabled and discriminated against him based upon this perception by firing him, even though he had shown that he did not suffer from any ongoing disabling mental impairments. The plaintiff, Robert Scott, was a former police officer who had served Blossburg Borough for nearly seventeen years before he was discharged in 2021. The defendants are the borough, its former mayor, Shane Nickerson, its chief of police, Joshua McCurdy, and the borough's solicitor, Patrick Barrett, III.

Following that trial, the jury entered a verdict in favor of the plaintiff, Robert Scott, on all claims and entered a verdict totaling $669,000 in favor of Scott. (Docs. 174-75). This verdict, in turn, inspired a series of post-trial motions, including defense motions to alter and amend this judgment, (Doc. 190), for judgment as a matter of law in the defendants' favor, (Doc. 191), and for a new trial. (Doc. 192). While the parties were briefing these motions, the presiding judge in the trial of their case, Judge Arbuckle, retired. These post-trial motions were then referred to the undersigned for our consideration.

We have now ruled upon these motions, denying the defendants' motions for judgment notwithstanding the verdict and motion for new trial. With respect to the defense motion for remittitur, we granted this request, in part, as follows: the plaintiff's back pay award of $16,000.00 was reduced to $15,749.00 and the plaintiff's front pay award of $228,000.00 was reduced to $227,476.00 in order to

2

conform with the evidence. Consequently, the verdict in this case was reduced from $669,000.00 to $668,225.00. In all other respects the motion was denied.

Having made these rulings which define the plaintiff as a significantly prevailing party in this litigation, we turn to the final pending motion in this case— the plaintiff's motion for attorneys' fees. (Doc. 181). This motion is fully briefed and is, therefore, ripe for resolution. As discussed below, this motion will be GRANTED in part and DENIED in part as follows: Having determined that the reasonable hourly rate for counsel is $400 per hour and further concluded that 288 hours of attorney time were reasonably devoted to this case, we find that the appropriate attorneys' fee award in this case is $115,200.00. Further, we will grant the plaintiff's request for $19,310.81 in costs which includes $5,825.26 in expert witness fees for the plaintiff's forensic accountant, Chad Staller.

## II.    Discussion

### A. Attorneys' Fees Calculation: Guiding Principles

At this juncture, several things are clear. First, the plaintiff, who has been awarded $668,225.00 in damages on multiple civil rights claims, is a prevailing party in this litigation. Second, as a prevailing party Scott is entitled to attorneys' fees on

both his federal and state law claims.[1] All then that remains is the calculation of these fees.

With respect to the calculation of these fees, familiar legal benchmarks govern our calculation of attorneys' fees for prevailing parties in civil rights litigation. As we have observed:

> "The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended . . . times an hourly fee based on the prevailing market rate." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir.1988); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The party seeking fees bears the burden of producing "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered ...." Knight v. Drye, 2009 WL 2928899, 2009 U.S. Dist. LEXIS 82369 (M.D.Pa. Sept. 10, 2009) (quoting McCutcheon v. America's Servicing Co., 560 F.3d 143, 150 (3d Cir.1990)). See also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478

---

[1] Scott's entitlement to attorneys' fees on his federal claims is uncontested. As for his state law claims under Pennsylvania's Human Relations Act, (PHRA), the defendants contend that attorneys' fees may not be recovered. We disagree and observe that we are not alone in our view that attorneys' fees may be awarded to prevailing parties in PHRA lawsuits. As this court has previously noted:

> Both the ADEA and the PHRA provide that attorneys' fees and costs are recoverable from an employers who have unlawfully discriminated in violation of either statute. . . . An award of attorneys' fees and costs under the PHRA is discretionary. See 43 Pa. Stat. Ann. § 962(c)(4)(c.2) ("[T]he court may award attorney fees and costs to the prevailing plaintiff.").

Watcher v. Pottsville Area Emergency Med. Serv., Inc., 559 F. Supp. 2d 516, 520–21 (M.D. Pa. 2008).

U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (party seeking fees has the initial burden of presenting evidence that the claimed rates and time expended are reasonable).

In the . . . familiar setting of fee-shifting awards, the Third Circuit has instructed that determining a reasonable hourly rate generally "is calculated according to the prevailing market rates in the relevant community." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir.2001); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir.2005) (in most cases, the relevant market rate is the prevailing rate in the forum of the litigation). A court must not make a finding of reasonableness based on its own "generalized sense" of appropriateness, but instead "must rely on the record." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir.2001) (quoting Smith v. City of Phila. Housing Auth., 107 F.3d 223, 225 (3d Cir.1997)). Courts are to "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir.2001); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' ... that the requested hourly rates meet this standard." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir.1996) (citing Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The petitioning attorney's usual billing rate is typically a starting point in this calculation, but it is not dispositive. Loughner, 260 F.3d at 180. Although the petitioning party has the burden of demonstrating that the requested hourly rates are reasonable, where the party opposing the asserted rate "has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." Ridley v. Costco Wholesale Corp., 217 Fed.Appx. 130 (3d Cir.2007) (quoting Washington, 89 F.3d at 1036; see also Black Grievance Committee v. Philadelphia Elec. Co., 802 F.2d 648, 652–53 (district court not free to disregard attorney's affidavit regarding reasonableness of hourly rate where the opposing party "filed no affidavit and offered no testimony contesting the accuracy of [the attorney's] statement with respect to charges by comparable practitioners").

5

> With respect to calculating the number of hours reasonably expended, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " Public Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir.1995) (internal citation omitted); see also Dellarciprete, 892 F.2d at 1183 ("The district court should exclude hours that are not reasonably calculated."). In general, hours are not considered to have been reasonably expended "if they are excessive, redundant, or otherwise unnecessary." Id. The court may permissibly deduct hours from the fee award if the attorney inadequately documents the hours claimed. Id.
>
> Once the petitioning party has made the preliminary showing described above, "the resulting product is presumed to be the reasonable fee to which counsel is entitled." Id. The burden then shifts to the party opposing the claimed fees by making specific objections to the proposed fee by way of an affidavit or brief. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990). Upon consideration of the opposing party's objections, the court enjoys substantial discretion to adjust the lodestar and ultimate fee downward. Id.

Lease v. Fishel, 712 F. Supp. 2d 359, 378–79 (M.D. Pa. 2010), aff'd, No. 1:07-CV-0003, 2010 WL 4318833 (M.D. Pa. Oct. 22, 2010).

Mindful of these guiding legal benchmarks we turn to the fees calculation in this case.

B. **The Fees Calculation in this Case**

With respect to this fees calculation, the parties' positions can be simply stated: Viewing the plaintiff as the prevailing party, his counsel have filed a 105-page brief with exhibits in support of their attorneys' fee petition. (Doc. 182). In this filing, plaintiff's counsel address the lodestar factors in the following fashion:

First, Attorney Ari Karpf asserts an hourly rate of $550.00 per hour for his contributions to the case. Second, lead trial counsel, Christine Burke, Esq., who performed the vast bulk of the work in this litigation, avers that her reasonable hourly rate is $425.00 per hour.

Plaintiff's counsel then indicates that they devoted a total of 306.20 hours to the litigation of this case between June 11, 2011 and April 28, 2025. Of these 306.20 hours, it appears that Attorney Karpf devoted approximately 13.4 hours to the case, and the remaining 292.8 hours of work were performed by Attorney Burke. Based upon these lodestar factors, the aggregate fees sought by counsel total $131,882.50. In addition, plaintiff's counsel seek to recover $19,310.81 in costs which they claim were incurred in this litigation. Included among these costs are $5,825.26 in expert witness fees for the plaintiff's forensic accountant, Chad Staller. Thus, the plaintiff's total requested costs and fees are $151,193.31.

The defendants have a different view regarding the scope of any fees award and raise both general and specific objections to this fees petition. Initially, the defendants raise a general objection insisting that the plaintiff's explanation of these costs is too vague and insufficiently documented.  In considering this question we are instructed that:

> Attorneys seeking compensation must document the hours for which payment is sought "with sufficient specificity." Keenan, 983 F.2d at 472. More specifically, our jurisprudence has established that "[a] fee petition is required to be specific enough to allow the district court 'to

determine if the hours claimed are unreasonable for the work performed.' " Id. at 473 (citing Rode, 892 F.2d at 1190 (citation omitted)). It is an established proposition of law that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). This proposition, however, only begs the question of what constitutes adequate documentation.

In answering this question, we do not operate in a legal vacuum. On several occasions, this Court has considered the proper degree of specificity required of a party seeking attorneys' fees. In particular, we recently undertook such a review in Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir.1990). We explained that specificity should only be required to the extent necessary for the district court "to determine if the hours claimed are unreasonable for the work performed." Id. at 1190 (citing Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir.1983), cert. denied sub nom. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Pawlak, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984)). Specifically,

> a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."

Rode, 892 F.2d at 1190 (citing Lindy Bros. Builders, Inc. of Philadelphia, 487 F.2d at 167).

Washington v. Philadelphia Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1037–38 (3d Cir. 1996).

Viewed through this pragmatic legal lens we find that plaintiff's counsel has described their work with sufficient specificity to allow us to make informed

8

decisions. This fees petition submission is supported by a detailed ten-page billing recitation. That recitation allocated attorney time to the case in six-minute increments. The billing summary contains hundreds of entries, each of which is supported by a narrative description which fully enables us to assess the necessity of the work performed by counsel. Given this fulsome billing summary, the defendants' general challenge to this fees petition fails.

The defendants then challenge this petition on six separate specific grounds, one of which it now undisputed by plaintiff's counsel. At the outset, the defendants note that Attorney Burke's billing records include some 18.2 hours of travel time. The defendants contend that travel time is not reimbursable, and, upon reflection, Attorney Burke agrees. Accordingly, we will reduce the total billable hours by 18.2 hours, to 288 hours.

The remaining challenges to this fees petition are disputed. These specific contested matters include the following: First, the defendants dispute the hourly rates claimed by Attorneys Karpf and Burke in their fees petition. Instead, the defendants propose hourly rates of $375.00 for Attorney Karpf and $275.00 for Attorney Burke as reasonable. Second, the defendants note that two of the plaintiff's five claims were dismissed prior to trial. Given the dismissal of these two claims, the defendants argue that Scott was only partially successful in this litigation and invite us to reduce the fees award by 40% to account for those claims which were dismissed. Third, the

9

defendants allege that 4.7 hours expended on a mediation effort should also be excluded from this fees petition. Fourth, the defendants note that counsel bill 6.1 hours for the preparation of five motions *in limine.* Noting that they consented in two of these five motions, the defendants request that this entry also be reduced by 40%. Finally, with respect to the plaintiff's bill of costs, the defendants argue that the expert witness fees charged by the plaintiffs are not compensable.

At the outset, we turn to the defendants' request that we apply a negative multiplier and reduce the fees award by 40%. Despite the fact that Scott's claims all arose out a single nucleus of operative facts, and Scott plainly enjoyed great success litigating the core issues in this case since he received a $668,225.00 verdict in his favor, the defendants note that two of the five original claims lodged by Scott were dismissed prior to trial. Inviting us to apply a simple, arithmetic approach to this fees petition, the defendants insist that the dismissal of two out of five claims standing alone mandates a 40% reduction in these fees.

We disagree. In fact, this sort of mechanical approach to fees calculation has been expressly rejected. Rather it is well-settled that:

> [T]he Supreme Court stated . . ., where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436, 103 S.Ct. at 1941. Thus, adjustments to the lodestar are within the discretion of the district court. Id. at 436–37, 103 S.Ct. at 1941. That discretion, however, is not unlimited. Id. at 437, 103 S.Ct. at 1941. For example, the Supreme

Court specifically rejected a rough mathematical approach like the one [proposed here].

Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall, 51 F.3d 1179, 1189 (3d Cir. 1995). Thus:

A simple, mechanistic reduction based solely on the ratio of successful to unsuccessful issues is, . . ., precluded by Hensley. Although the district court should consider the results obtained, it is required to do a more searching analysis than it did here before it can apply a negative multiplier.

Id. at 1190. This more searching analysis calls upon us to examine whether the various claims were related to one another and whether the plaintiff prevailed on the common core issues in these claims since we should only "reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, *that were distinct from the claims on which the party did succeed*. . . ." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001) (emphasis added).

When we conduct this more searching analysis, we find that all of Scott's claims arose out of the same set of facts, and the various claims were closely intertwined since they all entailed allegations of discrimination or retaliation based upon Scott's perceived disability and public statements. Since Scott's principal legal claims were all highly successful and were not distinct from the dismissed ancillary claims, we will decline this invitation to apply a 40% negative multiplier to the hours worked by counsel.

11

In the exercise of our discretion, we will also decline to make the additional specific reductions in hours worked urged by the defendants. These reductions related to 4.7 hours expended on an unsuccessful mediation effort and 6.1 hours billed for the preparation of five motions *in limine,* since the defendants concurred in two of these motions.

First, we believe that inclusion of mediation expenses is appropriate here. As one court has observed:

> The justification for paying an attorney for time reasonably spent in settlement negotiations is strong. In civil rights cases, Congress wanted a prevailing plaintiff's attorney to be compensated "for all time reasonably expended on a matter." Blanchard v. Bergeron, 489 U.S. 87, 91, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (quoting S. Rep. No. 94-1011, at 6 (1976)). Because civil rights may be vindicated equally as well by efficacious settlement as by dogged litigation, see Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), appropriate exploration of settlement is time well spent and, therefore, compensable.

Perez-Sosa v. Garland, 22 F.4th 312, 322 (1st Cir. 2022). Further, we have long recognized the ability of prevailing parties to recover for time spent in settlement negotiations. "Indeed, in Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp. — the seminal case that 'pioneered' the lodestar approach, Perdue, 559 U.S. at 551, 130 S.Ct. 1662 — the Third Circuit included 'settlement negotiations' among the classes of compensable work. 487 F.2d 161, 167 (3d Cir. 1973)." Id. at 322–23.

12

We also agree that the 6.1 hours spent by plaintiff's counsel on motions *in limine* practice was time well spent. In this regard, we will decline the defendants' suggestion to mechanically deduct 40% of this time because the defense concurred in two of the five motions *in limine*. As we have noted, such simplistic arithmetic calculations are disfavored. See Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Windall, 51 F.3d at 1189-90. Instead, adopting a more holistic approach, we find that the allocation of six hours to litigation of these evidentiary issues which strengthened the plaintiff's case at trial was reasonable and appropriate.

Thus, we conclude that the plaintiff's counsel are entitled to be compensated for 288 hours of work they performed in this case.

Having established the number of compensable hours in this case, we now address the final aspect of the lodestar calculation—setting the hourly rate for counsel. The parties have starkly contrasting views regarding the appropriate hourly rate. The plaintiff recommends an hourly rate of $550.00 per hour for Attorney Ari Karpf, and an hourly rate is $425.00 per hour Christine Burke, Esq., who performed the vast bulk of the work in this litigation. In contrast, relying upon a somewhat dated decision,[2] the defendants propose hourly rates of $375.00 for Attorney Karpf and $275.00 for Attorney Burke as reasonable.

---

[2] A.B. by & through F.B. v. Pleasant Valley Sch. Dist., No. 3:17-CV-02311, 2019 WL 2715681, at *8 (M.D. Pa. June 28, 2019), aff'd, 839 F. App'x 665 (3d Cir. 2020)

13

We will follow a third path in defining the proper hourly rate. In setting this hourly rate we begin with the familiar proposition that:

> Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Dellarciprete, 892 F.2d at 1183. The court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Dellarciprete, 892 F.2d at 1183.

Loughner, 260 F.3d at 180.

In this case, the relevant legal community is the Williamsport venue of this Court. Williamsport is where this case was tried and where it was assigned by location under the Court's internal operating procedures. Using Williamsport as the relevant legal community, we note that two seasoned judges in this Court have recently defined for us the prevailing hourly rates in this venire. In January of 2025, Chief Judge Brann canvassed the historic billing practices of attorneys in Williamsport vicinage before determining that an hourly rate of $375 was reasonable in this legal marketplace. Holmes v. Am. HomePatient, Inc., No. 4:21-CV-01683, 2025 WL 321829, at *10 (M.D. Pa. Jan. 28, 2025). Twelve months later, our colleague Judge Munley conducted a similar analysis and concluded that $400 per hour was a reasonable maximum rate for experienced counsel appearing in federal court in Williamsport. These benchmarks are supported by both practical experience and historical data. They are, therefore, fitting and proper measures for lodestar

14

purposes. Therefore, in setting the appropriate hourly rate for both Attorney Karpf and Attorney Burke we will use the most recent, and comprehensive prevailing hourly rate that has found for this vicinage, $400 per hour.[3]

Having determined that the reasonable hourly rate for counsel is $400 per hour and further concluded that 288 hours of attorney time were reasonably devoted to this case, we find that the appropriate attorneys' fee award in this case is $115,200.00.

## C. **The Bill of Costs**

Finally, plaintiff's counsel has submitted a bill of costs which seeks to recover $19,310.81 in costs which they claim were incurred in this litigation. Included among these costs are $5,825.26 in expert witness fees for the plaintiff's forensic accountant, Chad Staller. The defendants have lodged one objection to these costs, arguing that the inclusion of these expert witness fees is inappropriate. In our view, this issue is controlled by 42 U.S.C. § 1988 (c) which, in part, addresses fees and costs in employment discrimination cases and provides that: "the court, in its discretion, may include expert fees as part of the attorney's fee."

---

[3] While the plaintiff's fees petition distinguished between ttorneys Karpf and Burke, and proposed a higher rate for Attorney Karpf, given the prevailing rates in the Williamsport legal market, and the high degree of experience exhibits by both Mr. Karpf and Ms. Burke, we will apply the same $400 hourly rate to both counsel.

In this case Mr. Staller's expert testimony, which was uncontested, set the stage for an award of $243,225.00 in front- and back pay damages to the plaintiff. Given the role which this undisputed expert testimony played in obtaining highly favorable results for the plaintiff as the prevailing party, we believe that the proper exercise of our discretion under §1988 (c) warrants inclusion of these expert witness expenses in the attorneys' fees and costs.

An appropriate order follows.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: April 2, 2026

16